IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THE MINOCQUA BREWING COMPANY, LLC and
KIRK BANGSTAD,

Plaintiffs,

v.                                                                OPINION and ORDER

DANIEL HESS, MITCHELL IVES,                                       25-cv-325-jdp
SCOTT HOLEWINSKI, WILLIAM FRIED,
and ROBERT ALMEKINDER,

Defendants.

---

Plaintiff Kirk Bangstad owns the Minocqua Brewing Company, which operates a taproom in Minocqua, Wisconsin. Plaintiffs allege that in 2024 the members of Oneida County Planning and Development Committee revoked plaintiffs' conditional use permit for operating a beer garden outside the taproom and then in 2025 denied their application for another permit because of Bangstad's political views and his criticism of defendants. Plaintiffs sue under 42 U.S.C. § 1983, asserting a claim under the First Amendment.[1]

---

[1] This is the third lawsuit filed in this court in which plaintiffs have alleged that local officials have retaliated against them. In the first lawsuit, plaintiffs sued Minocqua officials for, among other things, delaying and denying permit requests related to the beer garden. *The Minocqua Brewing Company, LLC v. The Town of Minocqua*, No. 23-cv-578-jdp (W.D. Wis.). In the second lawsuit, plaintiffs alleged that town officials were withholding a permit related to the beer garden because plaintiffs refused to dismiss the first lawsuit. *The Minocqua Brewing Company v. The Town of Minocqua*, No. 24-cv-135-jdp (W.D. Wis.). The parties settled both cases, and plaintiffs were granted a permit for the beer garden. Plaintiffs removed a fourth case from state court, *Oneida County v. Bangstad,* No, 25-cv-520-jdp (W.D. Wis.), but the court remanded that case for lack of subject matter jurisdiction.

Defendants move for summary judgment on the ground that there is no evidence that they were motivated by plaintiffs' speech when making either of the decisions at issue. In the alternative, defendants assert a qualified immunity defense.

The court will grant defendants' summary judgment motion. It is clear from their history of litigation against local officials that plaintiffs are convinced that defendants have targeted them unfairly. But plaintiffs have not submitted admissible evidence to support that belief. Rather, it is undisputed that plaintiffs repeatedly violated the conditions of their permit and continued operating without a permit even after the permit was revoked. In fact, plaintiffs stated publicly that they would continue operating the beer garden regardless of whether it was allowed by their permit. So the observation of the court of appeals during the preliminary injunction stage still applies: "Given the concession of past and present willful violations of the permitting requirements, and a promise for future violations . . . [a]ny reasonable permit-issuing body would revoke or deny permits under those circumstances. There can be no First Amendment retaliation if the adverse action would have occurred even in the absence of the protected speech." *Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849, 856 (7th Cir. 2025).

Plaintiffs attempt to undermine the above conclusion with allegations that defendants look the other way when other businesses violate the rules. But the evidence plaintiffs cite does not show that defendants treated plaintiffs less favorably than similarly situated businesses. Again, the court of the appeals' conclusion during the preliminary injunction stage still applies: plaintiffs "offered no evidence that other similarly situated businesses were allowed to continue operations despite past permit violations and such promises of future violations." *Id.*

2

No reasonable jury could find from the evidence cited by plaintiffs that defendants retaliated against plaintiffs because of their speech. This makes it unnecessary to decide whether defendants are entitled to qualified immunity.

BACKGROUND

The following facts are not genuinely disputed.

In February 2023, plaintiffs completed an application for a conditional use permit to add an outdoor beer garden at their Minocqua taproom. The application first went to Minocqua's town board, which recommended denying the permit because the proposed beer garden would be on town land, and the town had not granted plaintiffs permission to use the land. The Oneida County Planning and Development Committee adopted the town's recommendation and denied the application.

In May 2023, plaintiffs completed a revised application for a conditional use permit. In October 2023, the committee voted to approve plaintiffs' application, subject to various conditions. The permit required plaintiffs to comply with all conditions of the permit "prior to allowing outdoor seating or allowing any outdoor activities." Dkt. 74, ¶ 59. Plaintiffs did not file an administrative appeal of any of the conditions.

In spring of 2024, plaintiffs began operating a beer garden. At that time, plaintiffs had not yet complied with the following conditions in the permit: (1) obtaining a zoning permit for the beer garden and the surrounding fence; (2) completing the construction of the driveway access from Highway 51 consistent with Wisconsin Department of Transportation requirements; (3) providing for proper signage and pavement markings to ensure one-way traffic flow on the property; (4) providing five paved and marked parking spaces; (5) paving

3

the driveway area; (6) constructing the seating area for the beer garden from pervious pavers; and (7) properly locating and screening the garbage dumpster.

In June 2024, the committee held a hearing on plaintiffs' noncompliance with the permit conditions. After committee members explained their basis for finding that plaintiffs were violating several conditions of the permit, the committee voted to suspend the beer-garden permit for 90 days subject to being lifted sooner if plaintiffs came into compliance. Plaintiffs did not file an administrative appeal of that decision.

After the committee's decision, plaintiffs continued to operate the beer garden without coming into compliance with the permit, so the committee held another hearing in July 2024. Plaintiffs' lawyer admitted during the hearing that plaintiffs continued operating the beer garden despite the suspension of the permit. When asked whether plaintiffs would continue operating the beer garden without a permit, counsel refused to answer that question on the basis of attorney-client privilege. Counsel stated that "the goal" was to satisfy the conditions of the permit by October 2024. At the conclusion of the hearing, the committee voted to revoke plaintiffs' permit on the ground that plaintiffs had continued violating the permit conditions and had not complied with the committee's decision to suspend the permit.

After the committee revoked the permit, plaintiffs continued operating the beer garden.

In March 2025, plaintiffs filed a new application for a permit to operate a beer garden. Plaintiffs sought a permit under the same conditions that had been approved in 2024.

Before receiving a decision on their application, plaintiffs began operating their beer garden in May 2025.

Defendants scheduled a hearing on plaintiffs' permit application for June 2025. The morning before the hearing, Bangstad posted a statement on his social media accounts that

4

plaintiffs would "would continue operating regardless of whether the Committee granted the" permit. Dkt. 29, ¶ 20. After holding a hearing, the committee voted to deny plaintiffs' permit application. During the hearing and in a follow-up letter, the committee's stated reason for its decision was that plaintiffs had a history of violating permit conditions and continued to operate even without a permit.

Plaintiffs filed an administrative appeal with Oneida County Board of Adjustment, which concluded that plaintiffs had met the standard for obtaining a permit. The board did not address plaintiffs' history of permit violations. The board reversed the committee's decision and granted a permit subject to 11 conditions.

Plaintiffs filed this lawsuit in April 2025, while the renewed permit application was pending. Plaintiffs filed two motions for a preliminary injunction, one before the renewed permit application was denied and one after. Dkt. 17 and Dkt. 26. The court denied both motions for a preliminary injunction because plaintiffs had little evidence that defendants were retaliating against plaintiffs because of their speech, so plaintiffs failed to show any likelihood of success on the merits. Dkt. 23 and Dkt. 32. Plaintiffs appealed the denial of the second motion, but the court of appeals affirmed, also concluding that plaintiffs had not shown a likelihood of success because they did not have evidence of causation. *Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849 (7th Cir. 2025).

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

## A.  Overview of the claims and legal standards

Plaintiffs allege in their amended complaint that defendants retaliated against them in two closely related ways: (1) revoking plaintiffs' permit to operate a beer garden; and (2) refusing to issue a new permit after plaintiffs came into compliance with the conditions of the previous permit.

A retaliation claim under the First Amendment has three elements: (1) the plaintiffs engaged in protected First Amendment activity; (2) the defendants took adverse action against the plaintiffs that would dissuade a person of ordinary firmness from exercising his or her First Amendment rights; and (3) the defendants took the adverse action because of the plaintiffs' protected speech. *See Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).  The first two elements are not in dispute. Neither side submitted proposed findings of fact about any specific statements or opinions of plaintiffs, but it is undisputed that plaintiffs often criticized the county and committee members in emails, at public hearings, and on plaintiffs' Facebook page. Both sides assume that plaintiffs' speech was protected by the First Amendment. Both sides also assume that a permit revocation and denial of a permit are sufficiently adverse to support a First Amendment retaliation claim. This is consistent with the court of appeals' conclusion when addressing the motion for a preliminary injunction that plaintiffs had satisfied the first two elements. *Minocqua Brewing,* 160 F.4th at 855.

Defendants focus on the third element, causation. Plaintiffs have the initial burden to show that their speech was a motivating or substantial factor in defendants' conduct; if

plaintiffs make that showing, the burden shifts to defendants to show that they would have made the same decisions even without plaintiffs' protected speech. *Id.*

On a motion for summary judgment, the question is whether there are any genuine issues of material fact. Fed. R. Civ. P. 56(a). Stated another way, the court must determine whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). In considering whether plaintiffs have met this standard, the court has limited its review to the evidence cited in plaintiffs' proposed findings of fact and responses to defendants' proposed findings of fact. The court will not discuss plaintiffs' summary judgment brief. As the court explained in its April 14 order, Dkt. 71, the court granted plaintiffs four extensions of time to file their brief, but the brief was still untimely, despite the court's warning that any failure to meet the final deadline would mean that the court would take the summary judgment motion under advisement without the benefit of plaintiffs' response. So the court has disregarded the brief.

## B. Evidence of retaliation

Defendants say that they revoked plaintiffs' permit because of plaintiffs' repeated violations of the permit and because plaintiffs continued operating his beer garden even while his permit was suspended. They say they denied his application for a new permit for those reasons, and because he continued operating his beer garden even after his permit was revoked. As the court of appeals acknowledged, those are nondiscriminatory grounds for defendants' decisions. *Minocqua Brewing,* 160 F.4th at 856. So plaintiffs must come forward with evidence

that defendants' reasons are pretexts for a retaliatory motive. *See Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 573 (7th Cir. 2021).

Plaintiffs admit that they continued operating the beer garden after defendants first suspended and then revoked the permit. Dkt. 74, ¶¶ 77–78, 91, 102–04. Plaintiffs attempt to dispute defendants' proposed finding of fact about the seven permit violations identified in the background section of this opinion. Specifically, plaintiffs cite generally to 32 pages of a transcript from a June 2024 hearing before the Oneida County Planning and Development Committee. Dkt. 74, ¶ 64 (citing Dkt. 58-24, at 50–81). The court did not consider the proposed dispute for three reasons: (1) plaintiffs did not state their version of the proposed fact, as required by the court's summary judgment procedures, *see* Motions for Summary Judgment II.D.3, attached to Dkt. 39, so it is impossible to determine what aspects of the proposed finding of fact plaintiffs are disputing; (2) plaintiffs did not explain in their response to the proposed finding of fact how anything in the cited pages of the transcript shows that plaintiffs were complying with any of the permit conditions; and (3) the portions of the transcript plaintiffs cite consist of argument by plaintiffs' counsel, not evidence. In any event, plaintiffs admit that "[w]hen [they] opened the beer garden, they had not complied with all of the conditions approved by the Committee and incorporated into the" permit. Dkt. 74, ¶ 63. So even if there is some dispute regarding the extent of plaintiffs' violations, there is no genuine dispute that plaintiffs were violating the permit before defendants revoked it.

Instead of submitting evidence that defendants' reasons were baseless, plaintiffs attempt to show that defendants have a history of unfairly targeting plaintiffs and treating them more harshly than other businesses. This evidence can be mostly grouped into three categories: (1) adverse acts by non-parties; (2) other adverse actions by defendants; (3) alleged more

favorable treatment of other businesses. Plaintiffs also cite a declaration of one of defendant Holewinski's former colleagues and the board of adjustment's decision to reverse defendants' decision denying a new permit application.

### 1. Adverse actions by non-parties

Much of the evidence plaintiffs cite in their proposed findings of fact relates to conduct of individuals and entities other than defendants (or conduct of unknown individuals or entities).[2] Plaintiffs do not cite evidence tying any of this conduct to defendants.

Plaintiffs say that defendant Holewinski was "aware" that other officials were "illegally enforcing County Zoning ordinances against Bangstad." Dkt. 73, ¶ 28. But the only evidence plaintiffs cite to support that assertion is an email chain that included Holewinski, in which Bangstad accused Karl Jennrich (the head of the Planning and Zoning Department) of "harassment and obstruction" and imposing requirements on him that he does not impose on other businesses. Dkt. 67-19. The email is hearsay, so it is evidence only that Bangstad complained to Holewinski about Jennrich; it is not evidence that any of Bangstad's allegations are true.

---

[2] *See* Plaintiffs' Proposed Finding of Fact (PPFOF) ¶ 6 (citing Dkt. 67-1, an October 2020 letter from the Oneida County Planning & Zoning Department about a sign being displayed); PPFOF ¶ 11 (citing Dkt. 67-2, a March 2021 email from Oneida County corporate counsel about plaintiffs' plans to display political signs); PPFOF ¶ 17 (citing Dkt. 67-6, a May 2022 letter from lawyer representing Minocqua about opening business before complying with an administrative review permit); PPFOF ¶ 25 (citing Dkt. 67-8, a June 2022 letter from the Oneida County Planning and Zoning Department that plaintiffs were displaying signs without a permit); PPFOF ¶¶ 34–35 (citing Dkts. 67-9, 67-14, 67-21, 67-23, and 67-25 regarding zoning violations alleged by the county's Planning and Zoning Director against plaintiffs and 11 other businesses); PPFOF ¶ 39 (citing Dkt. 67-11, an unsigned log titled "Minocqua Brewing Company (Kirk Bangstad) Complaint Timeline"); PPFOF ¶ 42 (citing Dkt. 58-24, a statement by a private citizen asking the committee to revoke plaintiffs' permit).

Even if Jennrich was treating plaintiffs unfairly, it does not follow that he was treating plaintiffs unfairly because of their speech or, more important, that Holewinski or any other defendant shared any animus that Jennrich may have had. Plaintiffs' position seems to be that Holewinski had supervisory authority over Jennrich, so it is reasonable to infer that Holewinski's failure to intervene is indicative of Holewinski's intent to retaliate against plaintiffs. But plaintiffs cite no evidence that Holewinski was involved with enforcement of zoning ordinances or, if he was, that he actually believed that Jennrich was acting illegally, or if he did, that any failure to intervene was the result of plaintiffs' speech.

The email chain includes a response from the human resources director that the county would conduct an investigation into Bangstad's allegations. Dkt. 67-19. That was an appropriate response. Holewinski was not required to determine on his own whether Bangstad's allegations had merit and then to intervene on Bangstad's behalf. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (high-ranking officials may delegate responsibilities to other staff without risking liability for constitutional violations). Plaintiffs say nothing about the adequacy of the investigation, so the court need not consider that issue.

### 2.  Other adverse actions by defendants

Plaintiffs cite two other adverse acts taken by some of the defendants, specifically, the committee's decisions in 2023 to deny plaintiffs' initial application for a conditional use permit and to revoke plaintiffs' administrative review permit, a more general permit that allowed plaintiffs to operate the taproom. Two of the five defendants (Daniel Hess and Mitchell Ives) did not join the committee until 2024, Dkt. 73, ¶ 4, so any decisions by the committee in 2023 are not indicative of those defendants' intent in 2024 and 2025.

10

In any event, plaintiffs cite no evidence suggesting that either of the 2023 decisions was retaliatory, so they cannot support an inference that any later actions were retaliatory. It is undisputed that the town board had recommended that the county deny the conditional use permit in 2023 because plaintiffs were proposing to put the beer garden on property owned by the town, and plaintiffs did not yet have the town's permission to use that land. Dkt. 74, ¶¶ 40, 42. It is also undisputed that in 2023 plaintiffs had been violating the conditions of their administrative review permit by holding numerous outdoor activities. *Id.*, ¶¶ 15–16, 22. Those are both nondiscriminatory reasons.

Plaintiffs suggest that defendants were aware of violations of the administrative review permit only because defendants were unfairly monitoring plaintiffs, citing a log of plaintiffs' violations. Dkt. 67-11. Plaintiffs cite no evidence that any of the defendants were responsible for the log. Regardless, it is not surprising that local officials may have been tracking plaintiffs' violations because plaintiffs were so vocal about them. For example, plaintiffs sent an email to county officials in May 2023, informing them about a "beer release party" that would involve outdoor activities, including a food truck, and acknowledging that he did not have a permit for doing this. Dkt. 74, ¶ 19 (citing Dkt. 58-5). Bagstad wrote, "If you wanna fine me now [f]or any violations this might cause, go for it, but this is what I have to do for this party." *Id.* Plaintiffs were essentially daring county officials to take enforcement action against them.

Both the decision to initially deny the conditional review permit and to revoke the administrative review permit were amply supported by nondiscriminatory reasons, and plaintiffs cite no evidence suggesting that the reasons were pretextual.

### 3.  More favorable treatment of other businesses

Most of plaintiffs' remaining proposed findings of fact are attempts to show that defendants punished plaintiffs for conduct that was ignored when committed by other local businesses. Plaintiffs raise the following issues in their proposed findings of fact:

- the county has granted waivers to other businesses regarding the county ordinance that requires businesses to have a minimum number of parking spaces, Dkt. 73, ¶ 15;

- the county has allowed other businesses to have unscreened dumpsters, *id.* ¶ 38;

- businesses called Rocky Reef Brewery and the Brew Station were treated more favorably, *id.* ¶ 45;

- other businesses were allowed to conduct outdoor operations, *id.* ¶¶ 49–51.

The court will address the evidence that plaintiffs cite to support each of these assertions.

**Parking space waivers**. Plaintiffs' position appears to be that county officials were more liberal in granting other businesses waivers for parking space requirements. The issue of parking space waivers came up in the context of plaintiffs' application for an administrative review permit, not the conditional use permit, so it has limited relevance. Regardless, this argument fails at the summary stage for the same reason the court of appeals concluded that it failed at the preliminary injunction stage: plaintiffs "provide no information as to what the criteria are for receiving a parking space waiver and whether the Brewery met them, whether the other businesses were similarly situated, or whether the defendants were responsible for granting those waivers." *Minocqua Brewing*, 160 F.4th at 856 n.4. It is not enough to simply assert that plaintiffs did not receive all the parking space waivers they believed they should have received.

12

**Unscreened dumpsters.** Failing to screen and properly place dumpsters was one of the permit violations cited by defendants. Plaintiffs say that "[t]he County allowed businesses within walking distance of [plainitffs] to have unscreened dumpsters." Dkt. 73, ¶ 38.

Plaintiffs' proposed finding of fact is deficient for several reasons. First, the only evidence plaintiffs cite to support the fact is a July 2023 email that Bangstad sent to defendant Holewinksi and other local officials in which Bangstad alleged that other businesses "don't have covered dumpsters." Dkt. 67-10. The email is hearsay, so the court cannot consider it to show what other businesses were doing.

Second, plaintiffs do not cite evidence that any other business was violating a permit condition. It is undisputed that there is no ordinance governing dumpster screening, and the permits of older businesses do not include that condition. Dkt. 74, ¶¶ 122–24. Bangstad did not submit copies of the permits for the other businesses, so even if Bangstad saw other businesses without screened dumpsters, that would not show a violation by itself.

Third, plaintiffs do not cite evidence that county officials were aware of a potential violation before Bangstad notified them. County officials became aware of plaintiffs' dumpster-related permit violations, not because defendants were investigating plaintiffs, but because the Oneida Planning and Zoning Department received a complaint from a neighbor that plaintiffs had placed their dumpsters in front of the neighbors' windows, and the neighbors "would like to be able to open their windows without being subject to the stench of the dumpsters." Dkt. 58-41. So the lack of enforcement against other businesses is not necessarily evidence of disparate treatment.

Fourth, plaintiffs do not cite any evidence that the other dumpsters they identify remained unscreened after Bangstad complained about them. It is undisputed that plaintiffs'

13

dumpsters remained unscreened for an extended period of time. Dkt. 74, ¶¶ 129–30. Defendants do not cite evidence of a similar problem with other businesses. In fact, plaintiffs do not cite any evidence to dispute defendants' proposed finding of fact that county officials contacted the other businesses after Bangstad complained about them, and the other businesses remedied the problem. *Id.* ¶ 131.

Fifth, and most important, plaintiffs do not cite any evidence that defendants ever took action against them because of the placement of his dumpsters or his failure to screen them. It is undisputed that county officials did not issue citations to plaintiffs for the dumpster issue, even after the neighbor complained. The issue was briefly raised during the June 2024 hearing, but the conclusion was that plaintiffs had by then satisfied the permit conditions regarding the dumpsters. Dkt. 58-24, at 77:7–10. So there is no basis for finding that defendants enforced rules regarding dumpsters more harshly against plaintiffs than against other businesses. In fact, it is undisputed that the county has also warned other businesses about violations of permits related to dumpster placement and screening. Dkt. 74, ¶ 132.

**More favorable treatment of Rocky Reef Brewery and the Brew Station.** Plaintiffs submitted the following proposed finding of fact: "Rocky Reef Brewery and the Brew Station were granted Conditional Use Permits, allowing them to operate beer gardens without Conditional Use Permits." Dkt. 73, ¶ 45. It is not clear what plaintiffs are trying to say because it makes no sense that a business would be granted a permit to operate without a permit. Regardless, plaintiffs cited no evidence to support the proposed fact, so the court will disregard it.

**Outdoor operations of other businesses.** In their proposed findings of fact 49, 50, and 52, plaintiffs say that three other businesses were warned about conducting outdoor

14

operations but continued to do it without consequence. For several reasons, plaintiffs have not shown that any of the businesses are similarly situated to them.

First, the warning letters plaintiffs cites were about an outdoor table and chairs within a public right-of-way, outdoor displays and planters within a public right-of-way, and an outdoor display without a permit. Dkts. 67-21, 67-23, and 67-25. But defendants did not suspend or revoke plaintiffs conditional use permit or refuse to issue a new conditional use permit for having outdoor displays. Plaintiffs say that "the county regularly noted Bangstad's outdoor clothing displays in their enforcement log," Dkt. 73, ¶ 51, but plaintiffs do not identify any instances in which defendants actually took any adverse action against plaintiffs for those displays. So a similar failure to take enforcement action against other potential violators is not evidence of retaliation.

Second, plaintiffs have not cited evidence that any of the businesses continued the conduct they were warned about. Plaintiffs cite photographs of business storefronts showing sandwich boards in front of the businesses in two photographs, planters on the ground in one photograph, and clothes hanging on a door in one photograph. Dkts. 67-22, 67-24, 67-26. Plaintiffs do not cite testimony of a witness with personal knowledge explaining that the photographs are of the same businesses identified in the warning letter (the warning letters do not identify the stores) or explaining how the photographs show continuing violations of the rules cited in the warning letter. None of the photographs show tables or chairs, and none of the warning letters mention sandwich boards. Plaintiffs also do not cite evidence that any of the signs or planters are in a public right-of-way, that clothes hanging on the inside of a door qualify as an outdoor display, or that any of the stores were violating their permits at the time.

Third, even if the businesses were continuing to violate rules regarding outdoor operations, plaintiffs cite no evidence that any of the defendants were aware of continuing violations. Defendants cannot enforce rules against violations they are not aware of.

The bottom line is that plaintiffs have not adduced evidence that defendants treated similarly situated businesses more favorably.

### 4. Other evidence

Plaintiffs point to two other pieces of evidence in their proposed findings of fact: (1) the declaration of Anthony Rio, who identifies himself as a former supervisor on the county board; Dkt. 22; and (2) the board of adjustment's decision to overturn defendants' decision. Neither piece of evidence raises a genuine issue of material fact.

As for the declaration, Rio says that in September 2022 he heard defendant Holewinski say something "to the effect" that there was no point going after Bangstad at the end of the summer, and "it was better to 'hit' him in the spring closer to the season opener." This statement would not permit a reasonable jury to infer retaliation for multiple reasons.

First, Holewinski is only one of five committee members. Plaintiffs cite no evidence that any of the other committee members made similar statements or that Holewinski influenced their vote. Plaintiffs cannot prove their retaliation claim if the committee would have made the same decision regardless of any animus by Holewinski. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* 811 F.3d 866, 886 (7th Cir. 2016); *Guth v. Tazewell County*, 698 F.3d 580, 586 (7th Cir. 2012)

Second, the statement is from 2022, years before any of the decisions at issue in this case. A long passage of time between a statement and an adverse action undermines any

inference that the adverse action was motivated by any bias expressed in the statement. *Simstad v. Scheub*, 816 F.3d 893, 900 (7th Cir. 2016).

Third, Rio provides no context for the statement, he does not identify exactly what Holewinski said, and the statement includes no reference to plaintiffs' speech or political views. Rio admits that he does not remember Holewinksi's precise words. *Id.* at 3. A party must provide "specific facts" to support his position at the summary stage. *See Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 991 (7th Cir. 2016). Rio's testimony is too vague to be helpful.

Fourth, plaintiffs do not identify any adverse actions that defendants took against plaintiffs when they reopened for the spring in 2023. The committee did revoke plaintiffs' administrative review permit, but that was not until August 2023, several months into the season. And, as the court already discussed, the decision to revoke the administrative review permit is not evidence of retaliatory intent because it is undisputed that plaintiffs had been violating the conditions of their administrative review permit by holding numerous outdoor activities.

In sum, Rio's declaration would not allow a reasonable jury to infer that defendants revoked plaintiffs' permit or denied him a new one because of his speech.

This leaves the decision of the board of adjustment overturning defendants' decision in 2025 to deny plaintiffs' new application for a conditional use permit. (Plaintiffs do not say that they appealed the 2024 decision to revoke their permit, or, if they did, that the board disagreed with defendants' decision.) Plaintiffs' position seems to be that a reasonable jury could infer retaliation because the board of adjustment reached a different conclusion from defendants. But the question is not whether defendants' decision was correct; it is whether

defendants are lying about their reasons to hide an unlawful motive. *Bless*, 9 F.4th at 573. Plaintiffs point to nothing in the board's decision questioning defendants' motives or otherwise criticizing defendants' decision.

It is true that the board's decision does not discuss plaintiffs' history of permit violations or their public statements about disregarding the committee's rulings, which were the grounds defendants relied on to deny the permit application. But plaintiffs do not contend that any rule or law prohibited defendants from taking those facts into consideration. Even if local rules did not allow defendants to consider plaintiffs' past conduct, that would not be evidence of retaliation. Plaintiffs did not have a First Amendment right to disregard their permit conditions or defendants' decisions, so defendants did not violate plaintiffs' First Amendment rights by considering that history of permit violations.

CONCLUSION

Defendants had nondiscriminatory reasons that "[a]ny reasonable permit issuing body" would have relied on when deciding whether to revoke plaintiffs permit and deny a new one. *Minocqua Brewing*, 160 F.4th at 856. Plaintiffs offer no legitimate excuse for failing to comply with their permit or for disregarding the committee's decisions. Plaintiffs' accusations that defendants unfairly targeted them because of plaintiffs' speech are simply unsupported by the evidence. Plaintiffs have not adduced evidence from which a reasonable jury could find that defendants violated plaintiffs' First Amendment rights, so the court will grant defendants' motion for summary judgment.

18

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 55, is GRANTED. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered May 20, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge